UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:15CV-00070-HBB

**MELISSA REARDEN**                                                                                  **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                                                 **DEFENDANT**

**MEMORANDUM OPINION
AND ORDER**

BACKGROUND

      The Commissioner of Social Security denied Melissa Rearden's application for disability insurance benefits. Reardon seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Both Rearden (DN 14-1) and the Commissioner (DN 19) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).

FINDINGS OF FACT

      Melissa Rearden is 52 years old, has a twelfth grade education, and lives in Kirksville, Kentucky, with her husband (Tr. 44). In the past, Rearden has worked as Captain of the Catering Department at the Executive Inn and as a machine operator at Omnico, Inc. (Tr. 45-46). In 2010,

Rearden briefly collected unemployment before getting a job at Marathon for two months (Tr. 44-45). She stopped working at Marathon because her neuropathy got worse and interfered with her daily activities (Tr. 51). Rearden testified that she does laundry, cleans the house, and prepares meals (Tr. 57).

Rearden applied for disability insurance benefits ("DIB") under Title II, claiming that she became disabled on October 7, 2010, as a result of diabetes type 2 (Tr. 188, 214). Her application was denied initially and on reconsideration (Tr. 76, 93). Administrative Law Judge Marci Eaton ("ALJ") conducted a hearing in Paducah, Kentucky, on August 7, 2013 (Tr. 39). Rearden attended the hearing with her attorney, Bradley Rhoads (Id.). Stephanie Barnes, an impartial vocational expert, also appeared at the hearing (Id.). The ALJ issued an unfavorable decision on November 8, 2013 (Tr. 33).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Rearden has not engaged in substantial gainful activity since October 7, 2010, her alleged onset date (Tr. 22). Second, Rearden has the severe impairments of "diabetes mellitus, peripheral neuropathy, degenerative disc disease, osteoarthritis, chronic obstructive pulmonary disease (COPD), and affective disorder" (Id.). Third, none of Rearden's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Id.). Fourth, Rearden has the residual functional capacity ("RFC") to perform light work with the following specifications:

> [S]he can frequently climb ramps and stairs, but only occasionally climb ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to vibrating equipment, moving machinery, and unprotected heights. She is limited to understanding,

> remembering, and carrying out short, simple, one-to-three step instructions. She has the ability to make simple work-related judgment. She can have frequent interaction with the public. She should avoid fast-paced work and work with excessive noise.

(Tr. 24). Additionally, Rearden is unable to perform any of her past relevant work (Tr. 31). Fifth and finally, considering Rearden's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (Tr. 32).

Rearden appealed the ALJ's decision (Tr. 15). The Appeals Council declined review (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Rearden appealed to this Court (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

## B. Finding No. 3

Rearden argues that the ALJ failed to recognize all of her severe impairments, including her heart condition, obesity, hypertension, hyperthyroidism, and COPD (DN 14-1, at p. 8). Although the ALJ didn't label these conditions as severe, the Commissioner responds that the ALJ adequately assessed whether these conditions would cause any limitations on her ability to work (DN 19, at p. 5).

In Finding No. 3, the ALJ found Rearden has the severe impairments of diabetes mellitus, peripheral neuropathy, degenerative disc disease, osteoarthritis, chronic obstructive pulmonary disease, and affective disorder (Tr. 22). Upon determining that a claimant suffers from one severe impairment, the Administrative Law Judge must consider all impairments, severe and non-severe, in the remaining steps. Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003) (citing 20 C.F.R. § 404.1545(e)). While the ALJ here did not find that Rearden's heart condition, obesity, hypertension, and hyperthyroidism were severe impairments at step three, she did consider these impairments in her RFC determination.

As for Rearden's heart condition, the ALJ explained there is no evidence she suffers from a severe cardiovascular impairment (Tr. 27). Although Rearden did visit a cardiologist in July of 2011, he reported her condition was stable and recommended she lose weight and stop smoking (Id.). Likewise, the ALJ discussed Rearden's obesity, indicating she "thoroughly considered the impact of [her] obesity" and the effect it has on her ability to perform routine movement and necessary physical activity within the work environment (Tr. 28). However, the ALJ found Rearden's obesity did not cause additional limitations above those established by her severe impairments (Id.). Finally, the ALJ explained that even though Rearden has hypertension and

4

hyperthyroidism, there are no findings suggesting she has more than minimal limitations as a result of these conditions (Id.).

Rearden also believes that the ALJ should have ordered a consultative examination to assess the degree of her COPD (DN 14-1, at p. 8). When the evidence as a whole is not sufficient to support a decision on the claim, it is within the discretion of the Administrative Law Judge to order a consultative examination. 20 C.F.R. § 404.1519a. Here, there was nothing in the record indicating that the ALJ should order a consultative examination for Rearden's COPD. The ALJ concluded Rearden's COPD was a severe impairment and discussed pulmonary and chest examinations revealing normal effort and breath sounds. If anything, based on the evidence in the record, the ALJ gave Rearden the benefit of the doubt in finding her COPD was a severe impairment.

Rearden feels that if the ALJ had taken into account her "well-documented struggles with pain," she would have found Rearden to be disabled (DN 14-1, at p. 8). Yet the ALJ comprehensively discussed all of Rearden's severe and non-severe impairments in her eight-page RFC determination. All of these findings by the ALJ affirm that she considered Rearden's impairments alone and in combination throughout her decision. As such, the ALJ's decision is supported by substantial evidence.

### C. Finding No. 4

Rearden argues that the ALJ failed to consider objective medical evidence proving she meets the requirements of Listing 1.04A (DN 14-1, at pp. 3-4). The ALJ's decision, Reardon explains, only fully assessed whether her mental conditions met or equaled a listing but never discussed the spinal disorder listing (Id.). In opposition, the Commissioner contends that although the ALJ did not specifically mention Listing 1.04 at Finding No. 4, she thoroughly

discussed the medical evidence relating to Rearden's back impairments and explained in detail why the impairments were not disabling (DN 19, at p. 8).

A claimant must meet *all* of the specified medical criteria of a listing in order to show that her impairment matches the listing. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis added). "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003) (citing Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986)). Listing 1.04 covers "Disorders of the spine (e.g., herniated nucleus pulpsus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in *compromise of a nerve root . . . or the spinal cord.*" 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 1.04 (emphasis added). Additionally, to satisfy Listing 1.04A, a claimant must prove:

> A. Evidence of nerve root compression characterized by nuero-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakened or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting back or supine).

Id.

Here, at Finding No. 4, the ALJ noted that Rearden is not subject to any impairment in section 1.00 "musculoskeletal system" and stated that Finding No. 5 would explain this conclusion in greater detail (Tr. 23). In Finding No. 5, the ALJ went on to thoroughly discuss Rearden's back limitations, specifically her X-ray and MRI results. The ALJ pointed out that a lumbar spine x-ray revealed "mild degenerative changes at L5-S1 and that a cervical spine x-ray revealed "only mild ucinate degenerative changes at C5-C6" (Tr. 26). As for Rearden's MRI of the lumbar spine, the ALJ noted results revealing an "L5-S1 cephalad disc extrusion, deforming the thecal sac

and causing mass effect on the left S1 nerve root" and "mild disc bulging at L3-L4 and L4-L5 levels with a superimposed left recess/proximal forminal disc protrusion at L3-L4 "(Id.). The ALJ also discussed an MRI of Rearden's cervical spine, revealing a left C5-C6 disc protrusion causing mild-moderate recess stenosis (Id.).

Rearden has not identified any evidence beyond the x-rays and MRIs discussed in the ALJ's Finding No. 5 to support that she meets Listing 1.04A. In fact, Rearden only makes a cursory argument that her MRI "combined with multiple objective medical findings clearly establishes all of these requirements," which she followed with a string citation to the record (DN 14-1, at p. 4).

After reviewing the portions of the record Rearden cites to, it is evident that she cannot meet all of the elements of Listing 1.04A. Although the MRI of Rearden's lumbar spine showed an "L5-S1 cephalad disc extrusion, deforming the thecal sac and causing mass effect on the left S1 nerve root," the results do not specify that the nerve root or spinal cord has been compromised. Moreover, Rearden fails to prove "limitation of motion of the spine." In fact, the records from Mary Danhauer, APRN, that Reardon cites to, indicate her musculoskeletal range of motion is normal and her cervical back and thoracic back are normal (Tr. 599, 732, 740). Otherwise, Danhauer's records only note that Rearden "exhibits tenderness and bony tenderness in the lumbar back" and include a diagram with the following note: "Tender LS Spine, Tender to palpation [sic] paravertebral muscles, Pain in LB with SLR on the bilaterally, Pain in LB with [sic] rotation of bilaterally LE. R > L" (Tr. 599, 732). The note is difficult to decipher, but even so, it fails to demonstrate Rearden has motor loss accompanied by sensory or reflex loss and positive straight-leg raising test. Thus, the medical records do not support Rearden's argument that her impairments satisfy the stringent criteria of Listing 1.04A.

7

### D. Finding No. 5

Next, Rearden makes a number of arguments against the ALJ's RFC determination at Finding No. 5.  The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his physical and mental limitations.  20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946.  The Administrative Law Judge bases his RFC finding on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p.

#### 1. Mary Danhauer's Opinion

Rearden believes the ALJ improperly applied SSR 06-03 in finding that Mary Danhauer's opinion should be afforded little weight (DN 14-1, at pp. 5-6).  Rearden recognizes that Nurse Danhauer is not an acceptable medical source but refers to her as a "treating nurse practitioner" and argues that her opinion is supported by the record as a whole, including her objective findings (Id. at p. 6).  The Commissioner counters that the ALJ reasonably accounted for Rearden's neurological and musculoskeletal limitations by restricting her to a reduced range of light work (DN 19, at pp. 12-13).

The regulations define "acceptable medical source" at 20 C.F.R. § 404.1513(a) by listing the categories of medical sources that qualify.  It is well-established that APRNs are not "acceptable medical sources."  See Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007); Meredith v. Colvin, No. 3:14cv416, 2015 WL 2137202, at *17 (N.D. Ohio May 7, 2015). Rather, APRNs are considered "other sources" pursuant to 20 C.F.R. § 416.913(d)(1), and their opinions are neither entitled to controlling weight nor subject to the "good reasons" requirement of

the treating physician rule. *See* Social Security Ruling 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); Borden v. Comm'r of Soc. Sec., No. 1:13CV2211, 2014 WL 7335176, at *9 (N.D. Ohio Dec. 19, 2014). Nonetheless, an Administrative Law Judge may apply the factors from 20 C.F.R. § 404.1527(c) to opinion evidence from "other sources." SSR 06-03p at *4-5.

Here, the ALJ correctly acknowledged that because Mary Danhauer is an APRN, she is not an acceptable medical source (Tr. 31). The ALJ identified several reasons for affording little weight to Nurse Danhauer's opinion, most notably that the record did not support her opinion (Id.). The ALJ also discussed that she did not start treating Rearden until September of 2012, almost two years after her alleged onset date, and prior to this visit, Rearden "had not received treatment or taken medication for over a year" (Id.). Additionally, the ALJ noted although objective and clinical signs revealed findings precluding Rearden from any strenuous work, there are no findings to support Nurse Danhauer's opinion that she is unable to perform light work activity (Id.).

After reviewing the record, the undersigned agrees that Nurse Danhauer's treatment notes do not support the restrictive findings in her opinion. For instance, Nurse Danhauer's opinion states that Rearden can only stand for 30 minutes at one time and three hours in an eight-hour day; sit for about 15 minutes at one time and two and a half hours in an eight-hour day; and lay down once every hour for about ten minutes (747-49). On the other hand, Nurse Danhauer's objective treatment notes consistently indicate Rearden has a normal musculoskeletal range of motion and normal physical exam results on her cervical and thoracic back (Tr. 599, 732, 740). As discussed above, although there were some degenerative findings from x-rays and MRIs performed by Nurse Danhauer, none of her findings or impressions support the severity of limitations in her opinion (Tr. 572-74).

The ALJ clearly considered the 20 C.F.R. § 404.1527(c) factors in her exhaustive evaluation of Nurse Danhauer's opinion. Thus, her conclusion that Nurse Danhauer's opinion should be accorded little weight is supported by substantial evidence in the record and follows SSR 06-03.

### 2. Dr. John Gedmark's Opinion

Rearden also claims the ALJ improperly relied on the "snapshot opinion" of the non-examining state agency physician, Dr. John Gedmark (DN 14-1, at p. 6). In support, Rearden explains that Dr. Gedmark's review of the record was incomplete and "in no way considers actual observation or examination" of her (Id.). Because Dr. Gedmark did not review the entire medical record, Rearden argues his opinion is not supported by substantial evidence (Id. at p. 7). The Commissioner maintains that while Dr. Gedmark did not review the entire medical record, any shortcoming in his opinion was remedied by the ALJ's thorough review of the record (DN 19, at pp. 13-14).

The regulations provide that "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Generally, a non-examining physician's report is entitled to less weight than the reports of other physicians who examined the claimant. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a non-examining source has not reviewed a significant portion of the record, and the Administrative Law Judge fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing doctor's opinion, the decision cannot stand. Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009). But when the opinions of non-examining State agency medical/psychological advisors are consistent with the record, those opinions represent substantial evidence to support

the Administrative Law Judge's decision. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180, at *2, 3; <u>Atterbery v. Sec'y of Health & Human Servs.</u>, 871 F.2d 567, 570 (6th Cir. 1989).

Here, the ALJ adopted the analysis of State agency physician, Dr. Gedmark (Tr. 31). Dr. Gedmark performed his review of Rearden's record on October 23, 2012, and affirmed a prior RFC determination (Tr. 91). Admittedly, Dr. Gedmark did not evaluate the entire record because he performed his review before some of Nurse Danhauer's treatment and the issuance of her opinion (Tr. 594, 637, 745). It is, therefore, fair to conclude that Dr. Gedmark did not review a significant portion of the record. Nevertheless, the ALJ considered Nurse Danhauer's records and opinion in great detail before determining that her opinion was entitled to little weight.

Further, the ALJ appropriately adopted Dr. Gedmark's evaluation because it was consistent with the record. In his assessment, Dr. Gedmark considered Rearden's daily activities, limitations, and medications. Of note, Dr. Gedmark discussed Nurse Danhauer's treatment notes from September 12 and 19, 2012, indicating her musculoskeletal range of motion was normal and her muscle tone was normal (Tr. 91). Nurse Danhauer's additional records, post-dating Dr. Gedmark's decision, offer little probative value because of the inconsistencies between her treatment notes and finding of disability. This evidence also falls short of demonstrating that there is a reasonable probability that the state agency physician would have reached a different disposition if presented with this evidence. Because Dr. Gedmark's opinion was consistent with the record and the ALJ considered this fact before assigning it greater weight than Nurse Danhauer's opinion, the undersigned finds the ALJ's decision is supported by substantial evidence.

3. Rearden's Credibility

Rearden argues the ALJ failed in finding her testimony was not credible and failed to state sufficient reasons for doing so (DN 14-1, at p. 10). Specifically, Rearden claims it was improper to discount her credibility based on noncompliance and lack of treatment (Id.). The Commissioner responds that it was proper for the ALJ to consider whether Rearden's failure to receive treatment or take her medication was due to her financial situation or lack of insurance (DN 19, at p. 16).

When the Administrative Law Judge evaluates credibility, a claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530 (6th Cir. 1997); Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. Walters, 127 F.3d at 530; Duncan, 801 F.2d at 854. In making his evaluation, the Administrative Law Judge considers objective medical evidence, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

In determining whether a claimant suffers from debilitating pain and other symptoms, the Sixth Circuit applies the two-part test set forth in Duncan, 801 F.2d at 853. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. Duncan, 801 F.2d at 853. Here, the ALJ concluded there was objective evidence that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms (Tr. 28). Next, the Administrative Law Judge must

determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical opinion is of such severity that it can reasonably be expected to produce the alleged disabling pain." Duncan, F.2d at 853. Here, the ALJ found that Rearden's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (Tr. 28).

The ALJ offered several reasons for discounting Rearden's credibility. First, the ALJ explained that Rearden had "uncontrolled diabetes" because she was not compliant in receiving treatment or with taking her medication (Tr. 25). When Rearden began treating with Nurse Danhauer, she had not received any type of treatment for over a year (Id.). The ALJ also noted it was reasonable that Rearden experienced an exacerbation of symptoms from going more than a year without treatment or medication (Tr. 29-30). Specifically, the ALJ considered whether Rearden's noncompliance was due to her financial situation and lack of insurance and took note of her ability to support her long time smoking habit (Tr. 30). Courts within the Sixth Circuit have found that an Administrative Law Judge may consider a claimant's noncompliance as one factor that can diminish credibility. Williams v. Comm'r, Soc. Sec. Admin., No. 3:13-CV-1276, 2014 WL 1406433, at *13 (N.D. Ohio Apr. 10, 2014) (citing Kinter v. Colvin, No. 5:12CV490, 2013 WL 1878883, at *9 (N.D. Ohio Apr. 18, 2013)).

Along with considering Rearden's noncompliance with treatment and medication, the ALJ also discussed the discrepancies between her testimony and the report of her son (Tr. 28-29). Particularly, Rearden's son reported she mows her yard and babysits her grandchild, whereas, Rearden reports that she cannot mow the lawn and has a hard time doing household chores (Id.). The ALJ concluded that Rearden's testimony regarding her activities of daily living reveals

"significantly less activities than was previously reported" but that these limitations could not be objectively verified (Tr. 29).

The ALJ also considered Rearden's testimony that she has side effects of dizziness and trouble remembering things or focusing due to her medication (Tr. 29). To account for these side effects, the ALJ found Rearden should avoid concentrated exposure to hazards, and she is limited to simple work (Id.). Finally, the ALJ considered Rearden's testimony that she can only stand for about 15-20 minutes at a time, sit for about 20 minutes at a time, and must lie down for about three hours of the day due to pain (Tr. 29). Yet the ALJ explained that there are no objective findings in the record demonstrating limitations regarding prolonged sitting, standing, or walking (Id.).

Because the ALJ considered a myriad of factors in evaluating Rearden's credibility, including those mentioned in 20 C.F.R. § 404.1529(c), the undersigned finds the ALJ's credibility determination is supported by substantial evidence.

### 4. Lay Witness Testimony

In addition, Rearden claims the ALJ erred in giving "little weight" to third-party reports from her husband and two sons (DN 14-1, at p. 11). Rearden argues the ALJ "categorically reject[ed] all lay witness testimony" (Id. at p. 12). The Commissioner clarifies that the ALJ afforded "some weight" to these reports because although they indicated some limited activities, there was nothing indicating that Rearden could not perform a range of light work (DN 19, at p. 17).

SSR 06-03p instructs that in evaluating evidence from lay witnesses, "it is appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). When lay witness testimony is provided,

an Administrative Law Judge cannot disregard it without comment but, rather, must "give reasons for not crediting the testimony that [is] germane to each witness." Maloney v. Comm'r of Soc. Sec., 480 F. App'x 804, 810 (6th Cir. 2012). Yet when an Administrative Law Judge discusses at length the objective medical evidence, she is not required to give a separate review of a third party statement. See Pasco v. Comm'r of Soc. Sec., 137 F. App'x 828, 842 (6th Cir. 2005) (finding the ALJ did not err in failing to mention letter from claimant's mother).

Here, the ALJ explicitly afforded the third party reports from Rearden's husband and two sons "some weight" and discussed the evidence provided in each report (Tr. 30). The ALJ explained that although Rearden's husband and sons reported that she has some limitations, they described daily activities that are not very limited (Id.). For instance, the ALJ recounted statements from Rearden's son, Nathan, that she "[c]ooks, cleans for husband, babysits & helps raise grandchild" (Id.). Similarly, the ALJ noted Rearden's husband's statements that she prepares daily meals, does the mowing, and does some housework, but "has to take breaks several times due to getting light-headed or foot pain" (Id.). Rearden's other son, James, also corroborated that Rearden performs "some housework and yardwork," fixes small, easy meals, and watches her grandson for a few hours every couple of days (Id.). As such, the ALJ appropriately afforded "some weight" to the third party reports in the record, and these findings are supported by substantial evidence.

### 5. Improper Speculation

Rearden makes two claims that the ALJ erred in speculating as to medical conclusions (DN 14-1, at p. 9). First, Rearden claims the ALJ speculated in affording great weight to Dr. John Gedmark's opinion. The undersigned has thoroughly evaluated this argument in the preceding sections and found it is without merit. Second, Rearden claims the ALJ acted as her own medical

expert by failing to assign weight to the opinions of the state agency psychologists (Id. at pp. 9-10). The Commissioner argues that it is clear the ALJ rejected the state agency psychologist opinions because he found Rearden had a severe mental impairment and included limitations in his RFC pursuant to that mental impairment (DN 19, at p. 15).

The Administrative Law Judge is not bound to accept the opinion or theory of any medical expert, "but may weigh the evidence and draw his own inferences." McCain v. Dir., Office of Workers Compensation Programs, 58 F. App'x 184, 193 (6th Cir. 2003) (citation omitted). Even so, the Administrative Law Judge is not permitted to "substitute his own medical judgment for that of the treating physician," Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009) (citing Meece v. Barnhart, 192 F. App'x 456, 465 (6th Cir. 2006)), and may not make his own independent medical findings. Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted).

It is true that an Administrative Law Judge must consider all medical opinions that he or she received in evaluating a claimant's case. 20 C.F.R. § 416.927(d). Though the ALJ here did not assign specific weight to the state agency psychologists, it can be inferred from the decision that the ALJ rejected their findings. For instance, the ALJ recognized that the state agency psychologists opined that Rearden did not have a severe mental impairment (Tr. 31). The ALJ additionally noted that Rearden has neither required emergency room treatment for mental health problems nor undergone any mental health counseling or therapy (Tr. 31). However, because Rearden was taking psychotropic medication for an affective disorder, the ALJ found this was a severe impairment and limited her to a range of simple work (Id.).

Any error resulting from the ALJ's failure to accord weight to the state agency psychologists is, therefore, harmless in that the ALJ sufficiently explained his determination. The

ALJ did not engage in improper speculation by discussing Rearden's psychotropic medication and lack of mental health treatment.

### ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:   Counsel